Speir, J. (dissenting).—
The following memorandum or instrument in writing signed by the defendents is the alleged contract on which the plaintiff brought his action for the recovery of damages for the non-performance of the contract.
“ New York May 13, 1861. We agree to deliver P. S. Justice one thousand Enfield rifles, no other extras, in New York at eighteen dollars each, cash upon such delivery. Said rifles to be shipped from Liverpool not later than the 1st of July, and before if possible. W. Bailey Lang & Co.”
It is of the first importance to clearly understand and keep before our minds what the court of last resort has actually settled as the law of this case. After two arguments and upon a full consideration, it was sol *290 emnly decided by the court that the signing of this instrument by the vendors, the contract was taken out of the statute of frauds and binds the defendants, although it was not signed by the plaintiff; and it was consequently held that it was a valid instrument binding the defendants to deliver the rifles according to its terms, and that the contract was supported by a sufficient consideration (Justice v. Lang, 43 N. Y. 493).
The case was again tried, and the above adjudication was followed, and the plaintiff obtained a verdict and judgment which was affirmed by the general term of this court. An appeal was taken from this judgment to the court of appeals which was reversed and a new trial ordered. A new trial was had before the referee, who has found for the defendants, and an appeal is now taken from the referee’s decision.
By the last decision of the court of appeals, reported in 53 N. Y. 333, the learned judge adopts the conclusions the court had come to on the former appeal, as binding in this case ; and at the outset, in disposing of the case, it is conceded, as before decided, that the contract was supported by a sufficient consideration in the implied verbal promise of the' plaintiff to accept and pay for the rifles. The judge, on the trial which was last before the court for review, refused to submit to the jury any questions except those relating to damages, to which the defendants excepted. This was held to be error, for the reason if the plaintiff was entitled to recover it must be upon the theory that the written promise of the defendants, and the verbal promise of the plaintiff at the same time with the written promise, constituted together a consummated agreement upon which the defendants have-been charged; and the court held that it was a question for the jury to determine whether there was an agreement by plaintiff to receive and pay for the thousand rifles.
The only question, therefore, which now comes be *291 fore us, is the one discussed by the learned judge in his opinion—whether there was such a promise. As the case then stood, the evidence was conflicting, and it was for the jury to pass upon. Our attention is now called to a review of the evidence and findings of the referee.
The plaintiff and the defendant Wheeler, are the main witnesses who testify to the circumstances under which the contract was made, and who were present at the time.
There is no discrepancy between them in the following particulars. They agree that the paper or contract was drawn up and signed by Wheeler; a copy made by him and delivered to the plaintiff, who took it away with him, Wheeler retaining a copy or the original ; that Wheeler wrote the letter to Goodman at the same time, of the same date as the contract, and deposited it in the post, which went by the mail on the following morning ; that the defendants were the agents of Scoffleld & Goodman, and conducted their business in New York ; that Goodman was chairman or president of the Burmingham Small Arms Company; and that the defendants, as agents for Sooffield & Goodman (as testified to by Goodman), from time to time sent orders to them for guns.
The single point in controversy between the parties may be stated as follows :
The plaintiff claims that the contract signed by the defendants and delivered to him was completed and binding, and so understood by both parties at the time ; that no written order was to be given by him to the defendants for the one thousand rifles mentioned in the contract; that the parties then acted upon the paper as a consummated contract; and that the other order spoken of was to go with a letter of credit to provide for the payment in England of another one thousand, which was contemplated and discussed by the *292 parties, but not then settled by any agreement between them.
. The defendants’ position is that the paper signed m them was only a conditional contract, and was not de livered absolutely, but on the expectation that a written order for two thousand rifles should be delivered tr them, together with a letter of credit for the payment in England, for an additional one thousand rifles, besides the one thousand named in the contract. All the testimony in the case has been introduced by the respective parties to establish these positions as respectively claimed by each.
Bearing in mind that the decision of the court adopted by the learned judge in this case, was that “ if the contract was then consummated it is to be deemed valid in law,” then all prior negotiations were merged in the contract thus made. In order to ascertain whether there was such a promise which would support a sufficient consideration, we must direct our attention to the evidence, which shows what occurred at the time when and after the paper was signed and delivered.
• Wheeler says he said to the plaintiff, after having signed and read it to him, “ I want to add at the bottom of this, that we shall not be held for these rifles, in case they do not come. He (plaintiff) said to me, ‘ Do not put that on there. If you do you will spoil it.’ I want to show that all is right.” On the part of the defendant, this precaution can be only explained on the ground that the contract bound him, and he was providing against his liability. The objection of the plaintiff doing so, is intelligible only on the ground that the contract would lose its binding force by such an insertion.
When the contract was signed and delivered, the de- . fen dan ts took immediate action by sending forward a letter written by them to their agents in England: “Please put in hand at once, the one thousand ahead *293 of Syms (as with him I have held out no inducement for delivery), and get them off by invoice and bill of lading in our name, that I may not be brought in for damages, if the contract is not complied with.” There is no evidence in the case, that plaintiff knew the contents of this letter.
On the following day, May 14th, Wheeler writes to Goodman: “ Justice has given me an order for two thousand, one thousand of which I have agreed shall be shipped not later than the first of July, from Liverpool, . . and I shall be extremely anxious until you ship this thousand for Justice, as unless you do we shall be brought in for damages ; a letter of credit will go out by the next mail; if you have not one thousand in yours works to finish up in the time specified, get them from others, as this order must be jilted by us”
On May 16th, Wheeler writes to plaintiff, to send him the letter of credit to go by the Wednesday’s steamer, also the order, and says he should have made one stipulation, “in that contract made with you,” that he should throw in one of those ponies out of the lot he has. This letter is answered by the plaintiff, May 31st: “I tried to arrange for your credit to-day, not because it was part of the agreement, but to oblige you. It was specially stated, if I ordered another thousand, I would provide another means of payment, viz., in England ; and he says the money is deposited with a banker, for thousand ordered of you, payable to my order on delivery of the rifles, and adds, ‘ I will throw in the pony if the guns are delivered to me before July 1st, sure.' ” On May 30th defendants wrote to Shipley, their agent: “ Justice gave me an order which went out last week for one thousand, and was to give another order to go this week for another one thousand, with his letter of credit for the last lot, and, perhaps, for both. Please see about this, and telegraph us if he has not already *294 written us.” And on May 93rd, Wheeler writes to Shipley : “ The Connecticut order has been nobly can-celled. Justice can but do the same. It is represented that English steamers refuse to bring any more arms to America. If this is trae, I am precluded from tilling ihe order, as I did not fix delivery here, but shipment from Liverpool.” The letters of May 13th, 90th, and 93rd, were not on the former trials put in evidence.
There is no evidence in the case establishing any contract between the parties for the sale of two thous- and rifles. There is, then, no such contract. It is true the parties contemplated entering into an arrangement, the effect of which would be, if adopted, to add one thousand rifles more, which should be paid for by a letter of credit in England, and an order for the same. This arrangement was put an end to by the plaintiff’s letter, May 91st. So as to this, the defendants had distinct notice when -they wrote to their agent Shipley, that the Connecticut order had been cancelled, and plaintiff “ can but do the same.”
The letter of May 90th, written by the defendant to-his agent Shipley, states precisely what the contract was : “Justice gave me an order which went out last week-for one thousand, and was to give me another order to go this week for another one thousand, with his letter of credit for the last lot, and perhaps for both.” Here is a complete statement of the whole matter. He treated the contract in his possession as a sufficient order to act upon, and he did so act. He expected an order from the plaintiff for another one thousand, with his letter of credit for the last one thousand. He was anxious to have this contract with the plaintiff cancelled, as the Connecticut order had been nobly done. I think it would be a want of proper appreciation of the intelligence and experience of these parties as merchants, to believe that all this correspondence relating to a matter of such importance, *295 could be conducted by them without being fully aware of their liability under the contract in question.
The judgment should be reversed.